IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| OPTOTRAFFIC, LLC | : | CASE No. 1:13CV636 |
| Plaintiff, | : | (Judge Dlott) (Magistrate Judge Bowman) |
| vs. | : | |
| JIM NEIL, HAMILTON COUNTY SHERIFF | : | **COUNTY DEFENDANTS' MOTION TO DISMISS** |
| and | : | |
| HAMILTON COUNTY, OHIO et al, | : | |
| Defendants. | : | |

Now come Defendants Hamilton County Sheriff Jim Neil and Hamilton County, Ohio, in all capacities sued (collectively "County Defendants") and hereby move this Court to dismiss Plaintiff Optotraffic's Complaint under Fed.R.Civ.P. 12(b) for the reasons set forth in the attached memorandum.

        Respectfully submitted,
        JOSEPH T. DETERS
        PROSECUTING ATTORNEY
        HAMILTON COUNTY, OHIO


        */S/ DAVID T. STEVENSON*
        DAVID T. STEVENSON, 0030014
        CHRISTIAN J. SCHAEFER, 0015494
        Assistant Prosecuting Attorneys
        TRIAL ATTORNEYS
        230 East Ninth Street, Suite 4000
        Cincinnati, Ohio 45202-2174
        Telephone:  (513) 946-3120 (Stevenson)
                        (513) 946-3041 (Schaefer)
        Facsimile:   (513) 946-3018
        ATTORNEYS FOR COUNTY DEFENDANTS

**MEMORANDUM**

A.    **Factual Background**

Despite maintaining that it is a "non-party" to the underlying lawsuit, the Plaintiff, Optotraffic, LLC, has filed a notice of appeal with the First District Court of Appeals as an Intervening Defendant and has two pending appeals in the Ohio Supreme Court. The Plaintiff filed a notice of appeal to the First District Court of Appeals of the Entry Re: Contempt and Entry Awarding Costs and Attorneys Fees on October 8, 2013. This is just the latest installment in the legal battle in the Ohio court system that has unfortunately been drug into this Court by the Plaintiff.

The underlying lawsuit in this case began in October 2012 when several motorists, including Gary Pruiett, sued the Village of Elmwood Place challenging the ordinance that allowed Elmwood Place to use Optotraffic cameras to issue traffic citations. The Pruiett plaintiffs' motion for temporary restraining order was converted into a motion for preliminary injunction, and hearings on the motion were held in January 2013 before Judge Ruehlman. Optotraffic's attempt to intervene at that time was denied by Judge Ruehlman.

Judge Ruehlman entered an order permanently enjoining Elmwood Place from enforcing the traffic camera ordinance on March 7, 2013. Both Elmwood Place and Optotraffic attempted to appeal this decision to the First District Court of Appeals. However, the First District Court of Appeals ruled that the decision could not be appealed until the common pleas court had specified a dollar amount for the attorney's fees awarded against Elmwood Place in the Injunction Order.

In March 2013, the Pruiett plaintiffs moved for a finding of contempt against the Village of Elmwood Place because tickets based on traffic camera enforcement had been received after the March 7 order, and based on allegations that the traffic cameras were still in use. A hearing

on the contempt motions, in which Optotraffic did not have a right to participate, was held on June 27, 2013, and Judge Ruehlman found the Village of Elmwood Place in contempt of the Injunction Order. Judge Ruehlman's contempt order commanded the Hamilton County Sheriff's Office to "confiscate and hold all equipment used in the Automated Speed Enforcement Program through the conclusion of the litigation." *Exhibit D-2 to Plaintiff's Complaint and Motion for Preliminary Injunction*. The Sheriff had no discretion to disobey this direct order from Judge Ruehlman.

On July 8, 2013 Optotraffic and the Village of Elmwood Place filed a joint notice of appeal with the Ohio Supreme Court. The parties were appealing The First District Court of Appeals' decision that Judge Ruehlman's March 7 decision was not a final appealable order until attorney's fees were awarded. This case is still pending in the Ohio Supreme Court.

On July 22, 2013 Optotraffic filed a notice of appeal of the Contempt Order to the First District Court of Appeals and requested an emergency order releasing the equipment to Optotraffic. The First District Court of Appeals dismissed Optotraffic's appeal of the Contempt Order on August 22, 2013.

On September 11, 2013 the Plaintiff filed a Complaint for Preliminary and Permanent Injunctive Relief with this Court. The Plaintiff filed a more detailed Motion for Preliminary Injunction on October 2, 2013. In this motion the Plaintiff complains that they have had "every door to prospective relief in the state-court system slammed in its face without any hearing on the merits." *Plaintiff's Motion for Preliminary Injunction pg. 7*. The Plaintiff asserts this despite the fact that the Plaintiff filed an additional appeal with the Ohio Supreme Court on October 4, 2013, where they make essentially the same constitutional argument that they have made to this court. This October 4 appeal is still pending in the Ohio Supreme Court.

Finally, while still maintaining that the doors to state-court relief have been slammed in

–3–

its face, the Plaintiff filed an appeal of the Contempt Order with the First District Court of Appeals on October 8, 2013. Optotraffic filed this appeal because on October 3, 2013 Judge Ruehlman ruled on the attorney's fees from the contempt proceedings. Optotraffic therefore had a final appealable order which they could appeal. The doors to the Ohio state-court system have not been slammed in the Plaintiff's face. Rather, it seems that the Ohio court system is simply not moving as fast as the Plaintiff would like. The Plaintiff has a perfectly acceptable and adequate means of handling this matter in the state-court system. Dragging the Defendants and this Court into this strictly state-court matter is unacceptable.

### B.     Standard For Granting Motion To Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (citations and internal quotation marks omitted). A Rule 12(b)(6) motion tests whether a cognizable claim has been pleaded in the complaint. *Id.*    In ruling on a Rule 12(b)(6) motion, the Court must regard the factual allegations contained in the complaint as true. *Id* ). But, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A motion under Rule 12(b)(1) challenging the jurisdiction of a United States District Court based upon the face of the complaint also assumes that the factual allegations in the complaint are true. *RMI Titanium Company v. Westinghouse Electric Corporation*, 78 F.3d. 1125, 1134 (6th Cir. 1996). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may be based upon matters outside the pleadings. When considering a motion to dismiss

pursuant to Rule 12(b)(1) this Court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *See, e.g., Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)("when a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist."); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment).

A district court may dismiss an action for "failure to join a party under Rule 19." Fed.Civ.R. 12(b)(7).  There is a three step process to determine whether dismissal is proper under Rule 19. *Hooper v. Wolfe*, 396 F.3d 744, 747 (6th Cir. 2005).  A party is indispensable, and dismissal is proper under Rule 19 if: (1) the party is necessary, (2) their joinder cannot be effected, and (3) the court determines that it will dismiss the action rather than proceed without the party's presence. *Id.* (citing *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir.2004)).

C.        Plaintiff's Case Should Be Dismissed Under the Colorado River Abstention Doctrine

In *Colorado River Water Conservation District v. United States* 424 U.S. 800 (1976) the United States Supreme Court explained that even when cases do not fall within the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952). *See Columbia Plaza Corp. v. Security National*

*Bank*, 525 F.2d 620 (1975).

*Colorado River* involved the maintenance of contemporaneous parallel actions concerning a water rights dispute in both the Colorado state system and the federal system. The Supreme Court found dismissal of the federal cause of action was appropriate despite the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *McClellan v. Carland*, 217 U.S. 268, 282 (1910); *see Donovan v. City of Dallas*, 377 U.S. 408 (1964).

Nonetheless, circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration do exist. It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts. *Donovan,* 377 U.S. at 412; *Princess Lida v. Thompson*, 305 U.S. 456, 466 (1939); *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 477 (1936). This has been true even where the Government is a claimant in the existing state proceeding and then sought to invoke the jurisdiction of the district court. *United States v. Bank of New York & Trust Co.,* 296 U.S. at 479; *But cf. Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 227-228, (1957).

Under the *Colorado River* abstention doctrine, federal courts utilize a balancing test to determine whether or not to abstain from the proceedings. "Five factors influence the decision: (1) which court first assumed jurisdiction over the res or property involved, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, (4) the order of filing for the state and federal actions, and (5) the presence of a federal question." *Gottfried v. Medical Planning Services, Inc.*, 142 F.3d 326 (6th Cir. 1998)(citing *Colorado River*, 424 U.S. at 818-819)). A closer examination of these five factors demonstrates the justification for abstention in this case.

Assuming arguendo that this Court does have jurisdiction over this case, the Hamilton County Court of Common Pleas was the first court to have jurisdiction over this case and the property involved and therefore the first prong of the test tilts in favor of abstention. The convenience issue is not really in question as neither court imposes that great an inconvenience on either party. However, the goal of avoiding piecemeal litigation is very much an issue in this case, and once again this prong tilts in favor of abstention. The suggestion by the Plaintiff that "every door to prospective relief in the state-court system" has been "slammed" in their face seems disingenuous considering the fact that the Plaintiff currently has an appeal pending for this very case in the Ohio Supreme Court, and recently filed an appeal to the First District Court of Appeals. *Pruiett v. Elmwood Place*, App. Case No. A1209235 (1st Dist. 2013) EXHIBIT A; *Pruiett v. Elmwood Place*, Case No. 13-1581 (Ohio 2013) EXHIBIT B; *Pruiett v. Elmwood Place*, Case No. 13-1087 (Ohio 2013) EXHIBIT C. The Plaintiff may be frustrated by the fact that they had their initial appeals denied, but the fact that they currently have an appeal pending in both the First District and the Ohio Supreme Court demonstrates that they are getting their due process as post-deprivation hearings have been held to satisfy procedural due process requirements. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (even "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). The appeals process in Ohio is adequate, it simply appears that the Plaintiff did not want to wait for a final appealable order.

By filing a complaint in this matter, the Plaintiff has asked this Court to enter the fray and deliver an opinion that may directly conflict with Ohio law. Asking both federal and state courts to decide the same issue at the same time is begging for the type of protracted piecemeal litigation that the *Colorado River* abstention doctrine seeks to avoid.

Additionally, the timeline of filing state and federal actions cuts in favor of abstention as well. While the Plaintiff's appeal to the Ohio Supreme Court regarding the taking of their property was filed on October 4, 2013, and their appeal to the First District was filed on October 8, 2013, both subsequent to their complaint in this matter which was filed on September 11, 2013; the Plaintiff has had an appeal regarding the underlying common pleas case open in the Supreme Court since July 8, 2013. *Pruiett v. Elmwood Place*, Case No. 13-1087 (Ohio 2013) EXHIBIT C. Even if this Court were simply to compare the October and September dates, the difference is less than a month and hardly a strong reason to deny abstention. The Ohio courts are already very well versed in this conflict and the reduced learning curve to assimilate all of the facts will subtract from the time it takes for a final judgment in this matter.

Finally, there is no outstanding presence of a federal question that would make the path of abstention unreasonable. The issue of the Plaintiff being denied procedural due process through the taking of the traffic cameras is the exact same question that is being addressed in the Ohio Supreme Court. *Pruiett v. Elmwood Place*, Case No. 13-1581 (Ohio 2013) EXHIBIT B. There are no uniquely federal aspects of this case that would result in the Plaintiff being harmed by having his case heard in the Ohio court system.

Overall, using the *Colorado River* abstention doctrine, if this Court were to balance all of the factors, it is quite clear that the prudent decision would be to dismiss this case. At the very least, this Court should abstain and hold this case in abeyance until the Plaintiff has exhausted their state court remedies.

### D. Sheriff Neil Is An Arm Of The State And Entitled to Immunity Under The Eleventh Amendment

An unconsenting State is immune from suits brought in federal courts by her own citizens

as well as by citizens of another state. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). When officers are sued in their official capacity, they enjoy the same immunities enjoyed by the entities they represent. *Ernst v. Roberts,* 379 F.3d 373, 379 -380 (6th Cir.,2004) citing: *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (reheard en banc in *Ernst v. Rising,* 427 F.3d 351, 358 (6th Cir., 2005).

Local officials, when acting pursuant to and complying with state mandates that afford no discretion, are acting as arms of the state and are entitled to Eleventh Amendment immunity. *Brotherton v. Cleveland,* 173 F.3d 552, 566 (6th Cir.1999) (citations omitted). *See also Scott v. O'Grady,* 975 F.2d 366, 371 (7th Cir.1992)(holding that county official acted as arm of the State where official merely executed writ pursuant to state non-discretionary duty), *cert. denied,* 508 U.S. 942 (1993); *Echols v. Parker,* 909 F.2d 795, 801 (5th Cir.1990) (finding that local officials acted as State agents when they enforced a State anti-boycott statute by prosecuting boycotters, stating: "[a] county official pursues his duty as a state agent when he is enforcing state law or policy."). *Gottfried v. Medical Planning Services, Inc.* 280 F.3d 684, 692 -693 (6th Cir. 2002)(A sheriff acts as an arm of the state when enforcing a state court injunction.)

In this matter, the Hamilton County Sheriff's Office and Sheriff Jim Neil are enforcing the order of the Hamilton County Common Pleas Court by removing the traffic cameras and holding them until the common pleas court proceedings have been finalized. The Sheriff's Office has no discretion when following the orders of the common pleas court. Performing this non-discretionary duty entitles the Sheriff to the protections of the State, including Eleventh Amendment immunity.

E. **Hamilton County Is Not *Sui Juris* and Therefore Is Not A Proper Defendant**

The Plaintiffs have listed "Hamilton County" as a Defendant in this action. "To prevail

on a §1983 claim, a plaintiff must satisfy two prongs: (1) a constitutional deprivation; (2) by a *person* acting under the color of state law." *Stack v. Karnes*, 750 F. Supp. 2d 892, 896 (S.D. Ohio 2010) (citing *Adair v. Charter County of Wayne,* 452 F.3d 482, 491–92 (6th Cir.2006), *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir.1992))(emphasis in original). Hamilton County is a geographic location, not a "person," and as such is not *sui juris*. See *McGuire v. Ameritech Services, Inc.*, 253 F. Supp.2d 988, 1015 (S.D. Ohio 2003) (Ohio counties, as political entities, are not *sui juris* and are held accountable only through their elected representatives).

There is an exception to the rule that Ohio counties are not *sui juris*, and a party may seek a §1983 claim against a County if they allege a *Monell* claim that the County has engaged in a custom or policy that has deprived the Plaintiff of its constitutional rights. *Black v. Hamilton County Public, Defender Com'n*, 2013 WL 684394 *4 (S.D. Ohio)(citing *Stack v. Karnes,* 750 F.Supp.2d 892 (S.D.Ohio 2010) (Frost, J)). However, the Plaintiff in this action has failed to properly allege a *Monell* claim by failing to make any allegations that the County has engaged in a custom or policy of depriving constitutional rights. *Gottfried v. Medical Planning Services, Inc.* 280 F.3d 684, 693 (6th Cir. 2002) (Court injunction was not a custom or policy). As such, Hamilton County is not *sui juris* and is not a proper Defendant in this action.

While "Hamilton County" is listed as the official Defendant, it is possible that the Plaintiff, by writing "c/o Hamilton County Board of Commissioners" under "Hamilton County" in their complaint, was attempting to add the Board of County Commissioners of Hamilton County as Defendants in this matter (despite not listing any allegations against the Board). Even if this Court allows such a loose description of the Defendants to stand, the Plaintiff has failed to state any cause of action against the Board for which they are entitled to relief. The Plaintiff makes no specific allegations against Hamilton County or the Board of County Commissioners. The only allegation that could possibly be interpreted from the Complaint is that the Board is

somehow responsible for the actions of the Court of Common Pleas based on the fact that the Board has a right to control the offices within the County.

Unfortunately, even such a generous interpretation would not provide the Plaintiff with a claim upon which relief may be granted. The Board of County Commissioners has no policy making role in the operation of the Hamilton County Court of Common Pleas. "'[I]n actions brought pursuant to section 1983, the liability of supervisory personnel and government entities must be based on more than merely the right to control.'" *Spangler v. Wenninger*, 2008 WL 4186318, * 9 (S.D. Ohio)(quoting *Ridgeway v. Union County Com'rs* 775 F.Supp. 1105, 1110 (S.D.Ohio 1991)). Since the Plaintiff's complaint can, at most, claim that the Board was responsible based on their administration of the Court of Common Pleas, the case against the Board must be dismissed. *Id.* ("Dismissal is proper where the plaintiff's claim against the county commissioners is based solely on the funding and administration of the county government.")

F.  **The Court Does Not Have Jurisdiction To Hear This Case As The Plaintiff Lacks Standing**

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of America* 511 U.S. 375, 377, (1994). Whether a plaintiff has made out a case or controversy between himself and the defendant within the meaning of Art. III is a threshold question in every federal case that determines the power of the court to entertain the suit. *Warth v. Seldin* 422 U.S. 490, 498, (1975). The "case or controversy" limitation of Art. III requires that a federal court "act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Organization* 426 U.S. 26, 41-42, (1976). There must be an

–11–

injury in fact and a causal connection between the injury and the conduct complained of. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)(discussing standing). And, it must be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.*

With respect to Sheriff Neil and Hamilton County, the Plaintiff has not presented a justiciable controversy. The Plaintiff entered into a service agreement with Elmwood Place beginning in July, 2012. *Exhibit D-1 to Plaintiff's Complaint*. The agreement was for a term of three years. *Id.* The agreement stipulated that Plaintiff would provide traffic cameras and associated services to Elmwood Place in exchange for 40% of all revenue received from tickets and fees assessed through the automated traffic cameras. *Id.* To date, neither party has officially breached this agreement and the agreement remains in force. As such, Elmwood Place is still entitled to the services of Optotraffic and Optotraffic is entitled to 40% of any fees assessed by the cameras.

Unfortunately for the Plaintiff, Elmwood Place's practice of using traffic cameras to issue citations has been struck down by the Hamilton County Court of Common Pleas and is being appealed through the Ohio court system. Therefore, Elmwood Place cannot currently issue citations resulting in no revenue to the Plaintiff. It is true that the Plaintiff has suffered an economic loss, but this is due to the fact that their service agreement only provided for revenue from tickets issued, and no tickets may currently be issued.

It is entirely inconsequential that the Hamilton County Sheriff has taken possession of the cameras. Even if the Sheriff did not take possession of the cameras, Elmwood Place is still subject to a state court injunction and is not permitted to use the cameras. So fines may not be assessed. The Plaintiff's argument that these cameras could be used in another jurisdiction is without merit. The confiscated cameras are subject to the valid service agreement, and require

Optotraffic to use the cameras at a location chosen by Elmwood Place for the three year term. *Exhibit D-1 to Plaintiff's Complaint.* The argument that Optotraffic would be harmed because they cannot make money by using the cameras in another jurisdiction is even more perplexing considering the fact that Optotraffic had no problem with Elmwood Place maintaining possession and collecting "statistics" after the ordinance was struck down, even if it meant that Optotraffic would be not receiving any income due to the prohibition against traffic tickets. In fact, it was this supposed data-gathering that caused Elmwood Place to be held in contempt. *Exhibit D-2 to Plaintiff's Complaint.*

The Plaintiff asserts that its injury is based on not being able to use these cameras in another jurisdiction. However, if this Court allows the Plaintiff to take the cameras and use them in another jurisdiction, a ruling from the Ohio Supreme Court that overturns the decision of the common pleas court could leave Elmwood Place with an enforceable ordinance, but no cameras.

To the extent that a harm does exist, it cannot be fairly traced to the Sheriff, Hamilton County, or the Board of Commissioners. Neither the Sheriff nor Hamilton County nor the Board played any role in determining whether or not to confiscate the traffic cameras. The confiscation is properly traced to the Judge Ruehlman's contempt order, which ordered the Sheriff to confiscate the cameras. *See Gottfried v. Medical Planning Services, Inc.* 280 F.3d 684, 692 - 693 (6th Cir. 2002)(State court injunction and not the acts of the Sheriff enforcing was the cause of the injury.) Neither the Sheriff nor Hamilton County nor the Board made the decision to confiscate the traffic cameras from Elmwood Place. The Sheriff was performing the non-discretionary task of complying with state court orders.

**G.     The Case Lacks A Real Party In Interest And Plaintiff Has Failed To Join A Real Party In Interest**

–13–

Finally, the Court should dismiss this action because there is no real party in interest involved in this matter.  Under Rule 17(a) of the Federal Rules of Civil Procedure, every action shall be prosecuted in the name of the real party in interest. *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994).  Under this rule, the real party in interest is the party that is entitled to assert the right under the governing substantive law. *Id.* (citing *Lubbock Feed Lots, Inc. v. Iowa Beef Processors Inc.,* 630 F.2d 250, 256–57 (5th Cir.1980); *Simpson v. Providence Washington Ins. Group,* 608 F.2d 1171, 1173 n. 2 (9th Cir.1979); *Iowa Pub. Serv. Co. v. Medicine Bow Coal Co.,* 556 F.2d 400, 404 (8th Cir.1977); 6A Wright et al., *supra,* §§ 1543–44).

The real party in interest in this matter is Elmwood Place, who has not been joined as a Plaintiff.  Based on the valid three year service agreement between Elmwood Place and Optotraffic, Elmwood Place has the right to decide where to place the Optotraffic equipment for the life of the agreement. *Exhibit D-1 to Plaintiff's Complaint.*  Elmwood Place is also not allowed to use Optotraffic equipment for any purpose that is not allowed by law. *Id.*  If there is a dispute over where the Optotraffic cameras are to be placed or whether or not Elmwood Place violated Ohio law during the term of the service agreement, it is Elmwood Place that is the real party in interest and should be filing a complaint, not Optotraffic.

The analogous example of a car lease might help to demonstrate this concept.  An individual leases a car and then that car gets impounded.  Until the lessee breaches the lease, the lessor has no right to possess the car.  It is the lessee who has the right to take the necessary action to regain the possession of the leased car.  Without having Elmwood Place as a Plaintiff, there is no real party in interest filing this lawsuit.

Additionally, the Sheriff was following a non-discretionary order from the common pleas

–14–

court by confiscating the cameras. The Sheriff did not make the decision to confiscate and cannot make the decision to release the property. The real party in interest is the Hamilton County Court of Common Pleas. Judge Ruehlman was the party that made the decision to have the Sheriff confiscate the cameras. However that does not help Optotraffic because they did not join Judge Ruehlman or the Hamilton County Common Pleas Court as a Defendant, and the common pleas court is entitled to Eleventh Amendment immunity. *See Mumford v. Basinski,* 105 F.3d 264, 268 (6th Cir.), *cert. denied,* 522 U.S. 914 (1997) (An Ohio court of common pleas was an arm of the state for Eleventh Amendment immunity purposes).

Furthermore, the *Ex Parte Young* exception to the Eleventh Amendment is inapplicable in the present case. Under *Ex Parte Young*, Eleventh Amendment immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law. *See Ex parte Young,* 209 U.S. 123, 155-56 (1908). The key to this exception is that the requested relief must be prospective injunctive relief. The goal of *Ex Parte Young* is to prevent state officials from continually violating federal law. Overturning Judge Ruehlman's Contempt Order does not prevent a continual violation of federal law; rather it provides retrospective injunctive relief against a one time order of a state court. Other courts have held in similar circumstances that *Ex Parte Young* does not apply to such situations. See *Goodson v. Maggi,* 797 F.Supp.2d 587, 603 (W.D.Pa.,2011) (request to vacate prior court orders not subject to *Ex Parte Young*).

The unfortunate result of the complaint that has been filed is that this Court has been presented with a case with no real parties to the dispute involved. The Plaintiff in this case has suffered no infringement of their rights and the Defendants cannot provide the relief that is requested. The case should therefore be dismissed.

**III.   CONCLUSION**

Optotraffic's claims are barred by the *Colorado River* abstention doctrine, the Eleventh Amendment to the United States Constitution, and Article III of the United States Constitution. Defendants Hamilton County Sheriff Jim Neil and Hamilton County Board of Commissioners respectfully request that this Court dismiss the Complaint against them with prejudice pursuant to Fed.R.Civ.P. 12(b).

        Respectfully submitted,

        JOSEPH T. DETERS
        PROSECUTING ATTORNEY
        HAMILTON COUNTY, OHIO


        */S/DAVID T. STEVENSON*
        DAVID T. STEVENSON, 0030014
        CHRISTIAN J. SCHAEFER, 0015494
        Assistant Prosecuting Attorneys
        TRIAL ATTORNEYS
        230 East Ninth Street, Suite 4000
        Cincinnati, Ohio 45202-2174
        Telephone:  (513) 946-3120 (Stevenson)
                       (513) 946-3041 (Schaefer)
        Facsimile:    (513) 946-3018
        ATTORNEYS FOR COUNTY DEFENDANTS

CERTIFICATE OF SERVICE

      I hereby certify that on October 16, 2013, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

                                                            */s/David T. Stevenson*
                                                            David T. Stevenson, 0030014
                                                            Assistant Prosecuting Attorney